In the Matter of the Claim of PATRICIA CASE (FIFE), Respondent, v STATE INSURANCE FUND, Appellant. WORKERS' COMPENSATION BOARD et al., Respondents.

Third Department, December 31, 1986

**APPEARANCES OF COUNSEL**

*Raymond C. Green (Weiss & Wexler, P. C. [Louis R. Salvo],* of counsel), for appellant.

*Scheine, Fusco & Brandenstein, P. C. (Victor Fusco* of counsel), for Mattituck House Movers, Inc., respondent.

*Gladys Carrion (Donald Lazarus* of counsel), for Uninsured Employers Fund, respondent.

### OPINION OF THE COURT

MAHONEY, P. J.

On September 28, 1979, claimant's husband, Stanley Case, died as a result of serious injuries sustained in an accident while working for Mattituck House Movers, Inc. Thereafter, claimant filed two claims with the Workers' Compensation Board, one for compensation between the dates of Case's injury and death and the other for death benefits.

At a hearing on June 11, 1981, Frank R. Zaleski, Mattituck's president, testified that Mattituck started receiving insurance coverage from the State Insurance Fund around 1950, but that the original policy was canceled. Zaleski then testified that Mattituck started a second policy with the State Insurance Fund but, he stated, that policy was canceled "a few years before" 1979. Zaleski further testified that he assumed the policy was canceled for nonpayment because he had not made any premium payments. Zaleski testified that, since Mattituck was having financial problems, he made no further efforts to obtain coverage. At the conclusion of Zaleski's testimony, the Uninsured Employers Fund made a motion requesting that the Administrative Law Judge (ALJ) find that Mattituck violated Workers' Compensation Law § 50 by not providing workers' compensation insurance coverage for its employees. The ALJ denied the request and put the State Insurance Fund on notice.

The State Insurance Fund failed to appear at the next two hearings. On November 5, 1981, the ALJ found that despite Zaleski's testimony that he was uninsured on the date of Case's accident, the State Insurance Fund would still have to prove proper cancellation of Mattituck's policy.

On March 11, 1982, the ALJ held yet another hearing at which the State Insurance Fund finally appeared. Its representative testified that he had no personal knowledge of the case or of any of the policies involved. He further testified that all records concerning Mattituck's coverage had been destroyed in the normal course of business after they were six years old. The only document extant, according to the witness, was an index card which indicated that Mattituck's second policy was

canceled for nonpayment of premiums on October 10, 1972. On April 23, 1982, the ALJ held that the State Insurance Fund improperly canceled Mattituck's policy and, accordingly, was the proper carrier on the date Case was fatally injured.

Upon the State Insurance Fund's appeal the Workers' Compensation Board affirmed, finding there was no evidence that the State Insurance Fund canceled its policy with Mattituck. After reconsideration, the Board issued a second decision adhering to its position that since the State Insurance Fund did not prove it properly canceled Mattituck's policy, it was liable to pay claimant's claim. This appeal by the State Insurance Fund ensued.

At the time relevant to this proceeding, in order to cancel a contract of insurance for workers' compensation, a carrier had to serve a written notice on both the employer and the Board, either personally or by registered mail[1] (see, Workers' Compensation Law § 54 [5]). Strict compliance with the notice requirements is required in order to cancel a policy (Matter of Adebahr v 3840 Orloff Ave. Corp., 106 AD2d 770, 771). The carrier has to provide some evidence that the cancellation was properly mailed to the insured (see, Matter of Sarlo v Antona Trucking Co., 90 AD2d 611). Finally, it is irrelevant whether the insured was on actual notice if the technical notice requirements have not been met (see, Matter of Fromer v John St. Serv. Center, 34 AD2d 1081, 1082).

Here, the State Insurance Fund claimed that it had served the Board and that its other records were destroyed. This proof was inadequate (see, Matter of Hopkins v Players' Three, 99 AD2d 912, 913). This is not cured by Zaleski's admission that his company's policy was canceled. Further, any notations on the State Insurance Fund's index card were insufficient to prove proper service absent any proof that any such notation would have only been made if notice was served personally or by registered mail. Furthermore, any admissions made by Zaleski were not sufficient to establish compliance with the statute since Zaleski did not know the contents of the notice, the date of the receipt of the notice or the method of delivery.

The State Insurance Fund claims that its destruction of the records was permitted by Workers' Compensation Law § 82 (5). This statute allows destruction of certain records after six

---

1. Since 1973 certified mail has been permitted provided a return receipt is requested (see, L 1973, ch 154). This amendment is not applicable herein.

years, but it does not permit destruction of any records that are "made necessary by requirements of law". Since the law requires that a carrier must prove compliance with the notice provision if it cancels a workers' compensation insurance policy, Workers' Compensation Law § 82 (5) does not authorize destruction of the records in question.

While it is clear that the Board properly held that the State Insurance Fund failed to prove that it canceled the policy, this fact is not dispositive. The actual policy is no longer available, but the State Insurance Fund submitted a standard blank policy which was in use at the relevant time. It provides that it is in effect for 12 months and contains a renewal clause. The State Insurance Fund's records show that the Mattituck policy commenced May 18, 1971. The records also show an expiration date of *January* 17, 1972, although the State Insurance Fund concedes that this may have been an error, the correct expiration date apparently being *May* 17, 1972. The policy was obviously renewed since the alleged cancellation date was October 10, 1972. The Board found that the State Insurance Fund's inability to prove that it properly canceled the policy not only resulted in the policy being continued until its expiration date,[2] but further triggered the renewal clause each year until the present. Such finding strains the meaning and purpose of the statutes and could lead to unfair, indeed absurd, results.

The renewal clause states: "[this policy] shall automatically renew and continue in full force after the expiration of the original period of insurance, for succeeding periods of twelve months". The obvious purpose of the clause is to prevent a lapse in coverage caused by neglect or inadvertence on the part of the employer or the insurer. In the instant case, it is clear from the testimony that both the employer and the insurer affirmatively desired to terminate the policy. Thus, while the failure to prove that the policy was properly canceled continued the policy in force until its expiration date, this did not trigger the renewal clause so as to provide ad infinitum, premium free insurance coverage.

KANE, CASEY, WEISS and LEVINE, JJ., concur.

Decision reversed, on the law, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent herewith.

---

2. Presumably May 17, 1973.